IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
         Plaintiff,

v.                                      Case No. 03-10157-1-JTM

ANDRE DAVIS,
         Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on the defendant's Emergency Motion to Reduce Sentence under section 3582(c) of the First Step Act (FSA) and the Newly Enacted Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020 (Dkt. 238). For the reasons set forth below, the court concludes that Davis has not made a sufficient showing of extraordinary and compelling reasons to grant a sentence reduction under § 3582(c) and that the court has no authority to grant Davis relief under the CARES Act.

**Background**

On August 28, 2008, Davis was found guilty by a jury of conspiracy to distribute cocaine under 21 U.S.C. § 846 (count 1), possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1) (count 2), and interstate travel in aid of racketeering enterprises under 18 U.S.C. § 1952(a)(3) (count 3). He was sentenced on January 3, 2009 to a term of imprisonment of 240 months on each of counts 1 and 2 and 60 months on count 3, to run concurrently with each other and with his sentence in an Indiana state case. (Dkt. 172, at 1-2). The United States requested a sentencing enhancement under 18 U.S.C. § 851 on Davis's section 841(a)(1) conviction based on a prior drug felony. At the

time of sentencing the court held the enhancement was properly applied and sentenced Davis to 240 months - the mandatory minimum sentence established at the time by section 841(b). Davis's sentence was affirmed on direct appeal on March 21, 2011. (Dkt. 209). Davis then filed a number of collateral attacks on his sentence, none of which were successful. (*See* Dkt. 213, 227, 234, 237).

**Is Davis Entitled to Relief Under Section 3582(c)(1)(A)?**

In December 2018, the FSA amended 18 U.S.C. § 3582(c)(1) to authorize defendants to file their own motions for compassionate release after either having fully exhausted all administrative remedies to appeal a failure of the Bureau of Prisons (BOP) to bring a motion or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. *See* FSA, Pub. Law 115-391, 132 Stat. 5914 § 603(b). If the exhaustion prerequisite is met, the court may reduce a defendant's term of imprisonment if it considers the factors set forth in 18 U.S.C. § 3553(a) and finds that a reduction is warranted by "extraordinary and compelling reasons," that the defendant is not a danger to the community, and that the reduction is consistent with applicable policy statements issued by the Sentencing Commission. *See United States v. Britton*, 2020 WL 2404969 at *3 (D. N.H. May 12, 2020) (citations omitted). The court has considerable discretion in making such a sentence reduction. *See id.* The United States concedes that Davis has met the exhaustion requirement. (Dkt. 242, at 11).

The applicable policy statement is found in section 1B1.13 of the Sentencing Guidelines, and has not been amended since the passage of the FSA:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment … if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that –
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Application Note 1 to section 1B1.13 elaborates on the meaning of "extraordinary and compelling reasons" warranting a sentence reduction, specifying that if the defendant is not a danger to the safety of any other person or the community, extraordinary and compelling reasons can exist based upon (A) the defendant's medical condition, (B) the defendant's age, (C) the defendant's family circumstances, or the "catchall" provision (D): "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1.

Although the court has not been presented with any specific finding by the BOP, Davis does not appear to be a danger to any specific person or the community. The court's review of his criminal history shows him to be a non-violent offender who has had no significant disciplinary problems while in BOP custody. The United States does not argue that Davis would be a danger to society upon release. Consequently, Davis satisfies at least on a preliminary basis the policy statement's requirement that to be eligible for

3

release he must meet the condition set out in U.S.S.G. § 1B1.13(2). The question is whether the remainder of the circumstances argued by Davis constitute extraordinary and compelling reasons as contemplated by the policy statement.

At the outset, the court notes that neither Davis's age nor his family circumstances meet the criteria set forth in the policy statement. U.S.S.G. § 1B1.13 cmt. n.1(B) specifies that for a defendant to show extraordinary and compelling reasons based upon age, he must be at least 65 years old and have served at least 10 years or 75 percent of his sentence, and be experiencing a "serious deterioration" in mental or physical health as a result of the aging process. Davis is only 49 years old, and even if he had served 75 percent of his original sentence is not suffering any serious deterioration in mental or physical health as a result of the aging process. Likewise, Davis does not argue that any death or incapacitation of a minor child or spouse entitles him to relief on extraordinary and compelling circumstances. Consequently, Davis must rely upon a showing of extraordinary and compelling reasons under application note (1)(A), regarding medical conditions, or (1)(D), the "catchall" provision.

Application Note (1)(A) limits the medical conditions that satisfy the extraordinary and compelling criteria to those in which the defendant is suffering from a terminal illness, or those in which defendant is suffering from a "serious physical or medical condition," a "serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. §

4

1B1.13 cmt. n.1(A). Davis's medical records show that he suffers from asthma, which is a lifelong condition, along with chronic kidney disease, hypothyroidism, allergies, hypertension, and hyperlipidemia. His records note, however, that Davis's conditions appear to be well-controlled by medication, that he is able to walk an hour per day without wheezing, and that he has generally felt healthy. These medical conditions, standing alone, are not the type of terminal illness or serious medical condition that constitute extraordinary and compelling reasons for a sentence reduction under the applicable policy guidelines.

Even so, Davis contends that his medical conditions combined with the threat of infection with the novel Covid-19 virus while in BOP custody place him at a more serious risk of life-threatening complications if he contracts the virus, and that the combination of his medical conditions and the threat of Covid-19 constitutes an extraordinary and compelling reason to reduce his sentence. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (citing Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09PM), https://www.bop.gov/resources/news/202000313_covid19.jsp). *See also United States v. Eberhart*, 13-CR-00313-PJH-1, 2020 WL 1450745 at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in

the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.")

Davis is relatively young and his medical conditions, while chronic, appear to be well-controlled within the BOP environment. While his medical conditions may place him at some increased risk of complication should he be infected with Covid-19, the court finds that they do not rise to the level of a terminal illness or a serious physical condition that would substantially diminish Davis's ability to provide self-care within the BOP environment. Consequently, under the applicable policy guidelines, Davis's concerns regarding Covid-19 and his age and physical condition do not rise to the level of extraordinary and compelling reasons.

Notwithstanding his medical conditions and concerns about Covid-19, Davis argues that the FSA's reduction of the statutory mandatory minimum penalty for his § 841(a) conviction qualifies as an extraordinary and compelling reason to reduce his sentence under the catchall provision of U.S.S.G. § 1B1.13 cmt. n.1(D). At the time of sentencing, Davis's guideline range on the §841(a) count was 151 to 188 months based upon his criminal history and the quantity of drugs at issue. A prior felony drug conviction brought Davis within the statutory mandatory minimum sentence of 240 months provided by §841(b), however, which ultimately controlled Davis's sentence.

The FSA subsequently amended the statutory mandatory minimum on Davis's sentence from 240 months to 180 months. *See* FSA, Pub. L. No. 115-391, §401(a)(2)(A)(i), 132 Stat. 51945222 (2018). The United States urges that this amendment does not apply retroactively, and consequently does not provide a basis to reduce Davis's sentence. As

to the applicability of the amendment, FSA Section 401(c) provides " …the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." The offenses for which Davis was convicted were committed prior to the FSA's enactment, but Davis was also sentenced well prior to the FSA's amendment to section 841(b). The plain language of the FSA, then, does not make the reduction in sentence retroactively applicable to Davis's sentence.

This court has previously held that the "catchall" provision in application note 1(D) can apply, in combination with other circumstances, in cases where a drastic sentencing disparity results from an otherwise non-retroactive amendment to relevant sentencing provisions. *See United States v. O'Bryan*, No. 96-10076-3-JTM Dkt. 247 (D. Kan. Feb. 21, 2020) (citing *United States v. Maumau*, 2020 WL 806121 at *3 (D. Utah Feb. 18, 2020)). *See also United States v. Brown*, 411 F. Supp. 3d 446, 453 (S.D. Iowa 2019) ("district court assessing a compassionate release motion may still consider the resulting sentencing disparity" caused by the FSA's amendment in § 924(c) cases). The court's decision in *O'Bryan* was based on the FSA's amendment to the previously applicable "stacking" provisions in section 924(c) cases, the result of which would have been to reduce O'Bryan's term of imprisonment from twenty-five years to ten. In making that decision, the court specifically referred to other opinions concluding that excessively long sentences imposed under section 924(c)'s "stacking" regime could provide a basis for a district court to find extraordinary and compelling reasons in combination with other factors. *See Maumau,* 2020 WL 806121 at *3; *United States v. Brown*, 411 F. Supp. 3d at  453;

7

*United States v. Urkevich*, 2019 WL 6037391 (D. Neb. Nov. 14, 2019). Those cases noted that although the FSA had not specifically made the section 924(c) sentencing amendments retroactive, that fact was not dispositive of a court's ultimate discretion to grant compassionate release under section 3582. The court concluded in *O'Bryan* that the FSA's drastic revision of the sentencing regime applicable to section 924(c) offenses, combined with O'Bryan's rehabilitation progress, his good behavior while in custody, and the court's analysis of the 18 U.S.C. § 3553(a) sentencing factors supported a sentence reduction under section 3582(c).

In contrast to the situation presented by *O'Bryan* and other cases involving the FSA's amendment of section 924(c), the FSA's amendment to section 841(b), under which Davis was sentenced, specifically limits its applicability to cases in which the offense was committed prior to the FSA's enactment but the sentence not yet imposed. The court finds this limitation instructive. The court has previously noted its agreement with a majority of district courts who hold that "a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. N.1(A)-(C)." *United States v. Redd*, 2020 WL 1248493 at *8 n.18 (E.D. Va. 2020) (collecting cases); *see also Maumau,* 2020 WL 806121 at *4 (collecting cases). Even so, the court finds that the recent non-retroactive amendment to section 841(b)'s sentencing provisions is not an extraordinary and compelling reason justifying a sentence reduction under the catcall provision of the policy guideline.

8

As noted previously, the primary basis of Davis's request for a sentence reduction is his concern regarding certain health conditions and potential infection with Covid-19. The court does not find these concerns rise to the level of extraordinary and compelling reasons to reduce Davis's sentence. Nor would a reduction of Davis's sentence necessarily result in Davis's immediate release, given that he has only served twelve years of what would be a fifteen year sentence under his proposal. Davis does not cite any extraordinary rehabilitation efforts while in BOP custody, any family-related concerns, or other compelling reasons to reduce his sentence.

Further, the court finds that the FSA's subsequent reduction in sentences under section 841(b) does not outweigh the court's consideration of the factors listed under 18 U.S.C. § 3553(a) as applied to Davis. Even if the court finds extraordinary and compelling reasons under section 3582(c), the court must still engage in a balancing of the factors listed in section 3553(a) to determine an appropriate sentence. *See Maumau*, 2020 WL 806121 at *1. Here, the court reviewed the section 3553(a) factors and applicable sentencing guidelines at the time of sentencing, and determined that the 240-month sentence was appropriate. (Transcript of Sentencing Hearing, Dkt. 192, p. 6-7). Davis's arguments provide no reason from the court to deviate from its original analysis.

To the extent that Davis's motion could be construed as a request for relief under section 404 of the FSA, the court finds that provision to be equally inapplicable. Section 404(b) of the First Step Act amended some penalties on crack cocaine, but those amendments are specifically inapplicable to powder cocaine offenses. *See U.S. v. Griffin*, 1:95-CR-00751-UU, 2019 WL 6607259, at *1 (S.D. Fla. Oct. 1, 2019) ("Neither the First Step

9

Act of 2018 nor the Fair Sentencing Act of 2010 did anything to alter penalties for powder cocaine."). Consequently, they are not applicable to Davis's conviction on powder cocaine offenses.

**Is Davis Entitled to a Sentence Reduction Based Upon Section 3582(c)(2)?**

Section 3582(c)(2) allows for a reduction in term of imprisonment if defendant's sentence was based upon a guideline range subsequently lowered by the Sentencing Commission and the court finds that the reduction is consistent with the sentencing factors listed in section 3553(a) and applicable policy statements. As discussed above, Davis's sentence was based upon a mandatory minimum given the nature of his crime and prior criminal history, not upon a guideline range that was subsequently lowered by the Sentencing Commission. In addition, the court does not find that a sentence reduction here would be consistent with the factors listed in section 3553(a) or the applicable policy statement. Section 3582(c)(2) is consequently inapplicable to Davis's motion.

**Is Davis Entitled to Relief Under the CARES Act?**

Davis does not distinguish precisely what relief he seeks under the CARES Act, as opposed to the FSA, but the court construes his request as one to order a period of home confinement given the fact that a reduction in Davis's sentence would not necessarily lead to his immediate release from custody. The CARES Act expended the BOP's discretion by lengthening the maximum amount of time the Director is authorized to place an inmate in home confinement prior to release. *See United States v. Nash*, 19-40022-01-DDC, 2020 WL 1974305 at *1 (D. Kan. Apr. 24, 2020) (citing CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)); *see also Furando v. Ortiz*, 2020 WL 1922357

at *2-3 (D. N.J. April 21, 2020) (detailing home confinement procedures established by the Attorney General and BOP under the CARES Act).

Regardless of the circumstances elaborated by Davis in his motion, only the BOP has authority under the CARES act to order home confinement. *See Nash,* 2020 WL 1974305 at *3 ("the CARES Act authorizes the BOP – not courts – to expand the use of home confinement"); *United States v. Boyles*, 18-20092-JAR, 2020 WL 1819887 at *2 n.10 (D. Kan. Apr. 10, 2020) (explaining the difference between the CARES Act grant of authority to the BOP to lengthen the duration of home confinement and the court's jurisdiction to reduce a sentence under 18 U.S.C. § 3582(c)). Consequently, the court is without jurisdiction to grant Davis any relief under the CARES Act.

**Conclusion**

Certainly, the potential for infection with Covid-19 in a custodial environment and the consequences of that disease are not something to be taken lightly, but the court is constrained by section 3582(c) and the applicable policy guidelines establishing what constitutes extraordinary and compelling reasons to justify compassionate release. Davis's concerns about infection with Covid-19, while understandable, do not rise to the level of extraordinary and compelling reasons under the applicable policy guidelines. Davis's arguments regarding the FSA's subsequent amendment to the statutory mandatory minimum applicable to his sentence likewise do not provide extraordinary and compelling reasons to reduce Davis's sentence. Davis's Emergency Motion to Reduce Sentence (Dkt. 238) is therefore DENIED.

IT IS SO ORDERED.

Dated this 5th day of June, 2020.

                                              /s/J. Thomas Marten
                                              THE HONORABLE J. THOMAS MARTEN
                                              United States District Court